



FILED

FEB 19 2019

JUDGE MATTHEW F. KENNELLY
UNITED STATES DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

RONALD FEDER

No. 17 CR 789

Judge Matthew F. Kennelly

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, JOHN R. LAUSCH, JR., and defendant RONALD FEDER, and his attorney EUGENE STEINGOLD, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), Rule 11(c)(1)(C), and as more fully set forth below.  The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with transportation of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(1) (Counts 1-3), distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(B) (Count 4), and possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Count 5).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## **Charges to Which Defendant Is Pleading Guilty**

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the indictment: Count 1, which charges defendant with transportation of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(1), and Count 4, which charges defendant with distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(B).

## **Factual Basis**

6.    Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 1 and 4 of the indictment.  In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and constitute relevant conduct pursuant to Guideline § 1B1.3:

**With respect to Count One of the indictment**: On or about November 26, 2017, at Lincolnwood, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant, RONALD FEDER, knowingly transported and caused to be transported child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), using a means and facility of interstate commerce, and in and affecting interstate commerce by any means, including by computer, in violation of Title 18, United States Code, Section 2252A(a)(1).

**With respect to Count Four of the indictment**: On or about December 7, 2017, at Lincolnwood, in the Northern District of Illinois, Eastern Division, and elsewhere, FEDER knowingly distributed any material, namely, a 16 gigabyte Silver

2

Sony USB 3.0 thumb drive bearing product code BM1502249408, that contained child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), that had been shipped and transported in and affecting interstate and foreign commerce by any means, in violation of Title 18, United States Code, Section 2252A(a)(2)(B).

More specifically, in September 2016, FEDER was indicted in the Northern District of Illinois for possession of child pornography, as defined in Title 18, United States Code, Section 2256(8)(A), in violation of the Military Extraterritorial Jurisdiction Act, Title 18 United States Code, Sections 3261(a)(1) and 2252A(a)(5)(A). (US v. Feder, 16CR587 (Shah, J.)). At the time of the criminal activity described below, FEDER was on bond and under pre-trial supervision relating to this prior child pornography charge, which supervision included a prohibition on his use of the internet, as well as a notification of the potential effect of committing an offense while on pretrial release.

In particular, on or about November 21, 2017 an undercover law enforcement officer (the "UC") posted an advertisement on Craigslist.com seeking individuals interested in discussing a "taboo request." On or about November 26, 2017, FEDER responded to the request, and sent the UC a message stating that he (FEDER) had a "collection" available to share and was interested in discussing it with the UC via the encrypted mobile chat application Wire Swiss GmbH ("Wire"), which allows users to send one another text messages, files, images, videos, and audio files.

3

Between November 26, 2017, and December 6, 2017, the UC and FEDER communicated extensively over Wire. During those communications, FEDER offered to trade child pornography with the UC in exchange for the UC agreeing to coordinate a meeting at which FEDER could molest the UC's minor nephew and niece. FEDER further discussed with the UC strategies for molesting children and for obtaining child pornography. FEDER also described watching and fantasizing about children at the grocery store where he was employed.

Additionally, FEDER discussed with the UC FEDER's interest in child pornography and sent the UC photographs and videos containing child pornography. In particular, on or about November 26, 2017, FEDER sent the UC over Wire approximately 9 images containing child pornography, including an image depicting an adult male inserting his tongue into what appears to be a prepubescent girl's vagina. Further, on or about November 28, 2017, FEDER sent the UC over Wire approximately 6 images containing child pornography, including an image of a nude erect penis being inserted into what appears to be a nude prepubescent girl's vagina. Further, on November 29, 2017, FEDER sent the UC over Wire approximately 2 videos and 1 image containing child pornography, including a video showing a completely nude adult male having sexual intercourse with a completely nude prepubescent girl and engaging in other sexual acts with the prepubescent girl. In total, between November 26, 2017 and December 6, 2017, FEDER sent the UC over Wire approximately 2 videos and 22 images containing child pornography, including

4

images and videos which had been shipped and transported in and affecting interstate commerce by any means.

Moreover, during their communications over Wire and over the phone, FEDER and the UC made plans to meet in person at a coffee shop in Lincolnwood, Illinois so that FEDER could provide the UC with a thumb drive containing child pornography in exchange for a pair of the UC's minor niece's underwear. On or about December 7, 2017, FEDER in fact met with the UC at a coffee shop in Lincolnwood, Illinois. During that meeting, FEDER handed the UC a 16 gigabyte Silver Sony USB 3.0 thumb drive, bearing product code BM1502249408, containing child pornography at which time, in exchange, the UC provided FEDER with a bag containing a pair of children's underwear. During the meeting, FEDER further provided the UC with advice on locating child pornography on the Dark Web, avoiding law enforcement detection, and for locating a particular website that contained tips for molesting children. FEDER additionally directed the UC on how to locate online a 475-page document entitled "The Pedophile's Handbook," which included sections with guidance on such topics as "Finding Children: Babysitting and Scouting," "Kiddie Magnets," "Sex with Kids: Penetration Training," and "Escape Planning." During the meeting, FEDER also again discussed with the UC the coordination of a meeting at which FEDER could molest the UC's minor nephew and niece.

The thumb drive which FEDER knowingly distributed to the UC contained approximately 453 videos and 7,932 images containing child pornography, including

5

multiple videos showing adult males ejaculating onto the faces of prepubescent minors. FEDER was the owner and sole user of the thumb drive, and he stored videos and images of what he knew to be real minors engaged in sexually explicit conduct, including sexual intercourse, on the thumb drive. The child pornography images and videos possessed by FEDER on his thumb drive included depictions of prepubescent minors and minors who had not attained twelve years of age. FEDER knew that the child pornography videos and images were stored on the thumb drive. The thumb drive contained images and videos which had been shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, and the thumb drive itself was manufactured in China.

In addition to the 16 gigabyte Silver Sony USB 3.0 thumb drive, FEDER possessed other devices containing child pornography, including: 1) a 64 gigabyte SanDisk Cruzer Glide thumb drive with serial number 20060775030C74919967; 2) a 256 gigabyte SanDisk Cruzer Glide 3.0 thumb drive with serial number 4C530001050223122163; 3) an RCA laptop computer/tablet with model number RCT6K03W13 and Android ID number 97b579ec1b4b22d4; and 4) a 32 gigabyte SanDisk Micro SD card with serial number 000026367. Following a search of FEDER's home—where he was staying while on pre-trial release for his prior child pornography case—law enforcement additionally recovered from FEDER's bedroom, among other things, latex molds of prepubescent vaginas and female children's underwear.

Additionally, at age 17, FEDER masturbated his then ten or eleven year-old brother on two to three occasions.

7.      FEDER, for purposes of computing his sentence under Guideline § 1B1.2, stipulates to having committed the following additional offense, which has been charged and is now pending before the Honorable Manish S. Shah in the U.S. District Court for the Northern District of Illinois (16 CR 587):

Beginning on or about January 12, 2014, and continuing until on or about June 28, 2014, FEDER knowingly possessed material, namely, (1) a Toshiba 750GB External Hard Drive bearing serial number 32U0C0X2T; and (2) an MSI laptop, model MS-1492, bearing serial number GE4020C-009USK13O5000172, containing a Samsung Evo 250 GB Solid State Hard Drive bearing serial number S1DBNSAD971501, which contained an image of child pornography as defined in Title 18, United States Code, Section 2256(8)(A), that involved a prepubescent minor and a minor who had not attained twelve years of age, in violation of Title 18, United States Code, Sections 3261(a)(1) and 2252A(a)(5)(A).

During that time frame, FEDER was a citizen of the United States and a civilian employee of the Department of Defense. FEDER was present and residing in Japan and the Philippines outside the United States in connection with such employment. FEDER was not a national of, nor ordinarily resident in, Japan or the Philippines. At the time of indictment, FEDER was residing in the Northern District of Illinois.

On June 28, 2014, FEDER possessed electronic media storage devices that contained child pornography while he was living on the Naval ship Walter S. Diehl. These electronic media storage devices included: (1) a Toshiba 750GB External Hard Drive, bearing serial number 32U0C0X2T; and (2) a MSI laptop, model MS-1492, bearing serial number GE4020C-009USK13O5000172, containing a Samsung EVO 250GB Solid State Hard Drive, bearing serial number S1DBNSAD971501. FEDER had approximately 828 images and 232 videos of child pornography on these devices.

FEDER was the owner and sole user of the devices described above, and he stored videos and images on them of what he knew to be real minors engaged in sexually explicit conduct, including sexual intercourse. The child pornography images and videos possessed by FEDER on these devices included depictions of prepubescent minors and minors who had not attained twelve years of age. One image FEDER possessed depicted a prepubescent girl, with her legs spread and her genitalia exposed, who was bound at the wrists and ankles. Another image FEDER possessed depicted a prepubescent girl, with a penis inserted into her vagina. FEDER knew that the child pornography videos and images were stored on the devices.

In addition to the above described devices, FEDER also possessed other devices containing child pornography, including: (1) a Seagate 1TB External Hard Drive, bearing serial # 2GE90R9Ql; and (2) a Sony Vaio Laptop, bearing serial # 542748110001586, containing a Sony Vaio 512GB Laptop Hard Drive, bearing serial # S12NEACCO4898J.

8

Further, between May 5 and May 7, 2014, FEDER used a computer with the IP address 117.104.128.150 to download approximately 575 suspected child pornography files. At the time, FEDER was staying in the Navy Gateway Inn & Suites in Sashebo, Japan.

## Maximum Statutory Penalties

8.       Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.       Count 1 carries a maximum sentence of 20 years' imprisonment, and a statutory mandatory minimum sentence of 5 years. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also must impose a term of supervised release of at least 5 years, and up to any number of years, including life.

b.       Count 4 carries a maximum sentence of 20 years' imprisonment, and a statutory mandatory minimum sentence of 5 years. This offense also carries a maximum fine of $250,000. Defendant further understands that the judge also must impose a term of supervised release of at least 5 years, and up to any number of years, including life.

c.       Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charges to which he has pled guilty, in addition to any other penalty or restitution imposed.

9

d.      Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 40 years' imprisonment and the mandatory minimum term of imprisonment is 5 years.  In addition, defendant is subject to a total maximum fine of $500,000, a period of supervised release, and special assessments totaling $200.

e.      Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

f.      Defendant further understands that, pursuant to Title 18, United States Code, Section 3014, defendant will be assessed an additional $10,000 if the Court determines that he is a non-indigent person.

### Sentencing Guidelines Calculations

9.      Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the

10

kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

      10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.    **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2018 Guidelines Manual.

      b.    **Offense Level Calculations**.

      i.    Pursuant to Guideline § 3D1.2(d), the offenses of conviction and the stipulated offense are grouped.

      ii.    The base offense level is 22, pursuant to Guideline § 2G2.2(a)(2).

      iii.    The offense level is increased 2 levels, pursuant to Guideline § 2G2.2(b)(2), because defendant's conduct involved material involving a prepubescent minor or a minor who had not attained the age of 12 years.

      iv.    The offense level is increased 5 levels, pursuant to Guideline § 2G2.2(b)(3)(B), because defendant's conduct involved the distribution of child pornography in exchange for valuable consideration.

v.    The offense level is increased 4 levels, pursuant to Guideline § 2G2.2(b)(4), because defendant's conduct involved material that portrays sadistic or masochistic conduct or other depictions of violence.

vi.    The offense level is increased by 5 levels, pursuant to Guideline § 2G2.2(b)(5), because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor.

vii.    The offense level is increased by 2 levels, pursuant to Guideline § 2G2.2(b)(6), because defendant's conduct involved the use of a computer.

viii.    The offense level is increased by 5 levels, pursuant to Guideline § 2G2.2(b)(7)(D), because defendant's conduct involved 600 or more images.

ix.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

x.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its

12

resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

      c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

      d.    **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 42, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 360 months to life imprisonment, in addition to any supervised release, fine, and restitution the Court may impose. Defendant also acknowledges that he is subject to a statutory minimum sentence of 5 years' imprisonment.

      e.    Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and based on facts known to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guidelines calculation. Accordingly, the validity of

this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

        f.      Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Cooperation

11.     Defendant agrees he will fully and truthfully cooperate in any matter in which he is called upon to cooperate by a representative of the United States Attorney's Office for the Northern District of Illinois. This cooperation shall include providing complete and truthful information in any investigation and pre-trial preparation and complete and truthful testimony in any criminal, civil, or administrative proceeding.

### Agreements Relating to Sentencing

12.     At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation. If the government determines

that defendant has continued to provide full and truthful cooperation as required by this Agreement, then the government shall move the Court, pursuant to Guideline § 5K1.1, to depart from the low end of the applicable guideline range, and to impose the specific sentence agreed to by the parties as outlined below. The government shall not make a motion pursuant to 18 U.S.C. § 3553(e). Defendant understands that the decision to depart from the applicable guideline range rests solely with the Court.

13. If the government moves the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, this Agreement will be governed, in part, by Fed. R. Crim. P. 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 25 years. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth, defendant may not withdraw this plea as a matter of right under Fed. R. Crim. P. 11(d) and (e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting this Agreement, or otherwise refuses to accept defendant's plea of guilty, either party has the right to withdraw from this Agreement.

14. If the government does not move the Court, pursuant to Guideline § 5K1.1, to depart from the applicable guideline range, as set forth above, this

Agreement will not be governed, in any part, by Fed. R. Crim. P. 11(c)(1)(C), the preceding paragraph of this Agreement will be inoperative, both parties shall be free to recommend any sentence, and the Court shall impose a sentence taking into consideration the factors set forth in 18 U.S.C. § 3553(a) as well as the Sentencing Guidelines, and the statutory minimum sentence without any downward departure for cooperation pursuant to § 5K1.1. Defendant may not withdraw his plea of guilty because the government has failed to make a motion pursuant to Guideline § 5K1.1.

15.     Regarding restitution, defendant acknowledges that pursuant to Title 18, United States Code, Section 2259, the Court must order restitution in the full amount of the losses of any victim of defendant's offense, as the terms "victim" and "loss" are defined in that section. The amount of restitution shall be determined by the Court at sentencing.

16.     Defendant also acknowledges that in addition to restitution due pursuant to Title 18, United States Code, Section 2259, he is liable for restitution pursuant to Title 18, United States Code, Section 3663A, and that restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that, pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution

17.     Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.  If the Court finds that the defendant is a non-indigent person, defendant further agrees to pay the $10,000 special assessment, assessed pursuant to Title 18, United States Code, Section 3014, after he has satisfied all outstanding court ordered fines, orders of restitution, and any other obligation related to victim compensation ordered by the court and arising from the convictions, relevant conduct, and stipulated offense.

18.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

19.     Defendant agrees to waive and abandon any right, title, or interest he has in the following property: 1) a 64 gigabyte SanDisk Cruzer Glide thumb drive, bearing serial number 20060775030C74919967; 2) a 256 gigabyte SanDisk Cruzer Glide 3.0 thumb drive, bearing serial number 4C530001050223122163; 3) an RCA laptop computer/tablet, bearing model number RCT6K03W13 and Android ID number 97b579ec1b4b22d4; 4) a 32 gigabyte SanDisk Micro SD card, bearing serial number 000026367; 5) a Toshiba 750GB External Hard Drive, bearing serial number 32U0C0X2T; 6) an MSI laptop, model MS-1492, bearing serial number GE4020C-009USK13O5000172, containing a Samsung EVO 250GB Solid State Hard Drive,

bearing serial number S1DBNSAD971501; 7) a Seagate 1TB External Hard Drive, bearing serial # 2GE90R9Ql; and 8) a Sony Vaio Laptop, bearing serial # 542748110001586, containing a Sony Vaio 512GB Laptop Hard Drive, bearing serial # S12NEACCO4898J.

20.     Defendant understands that the government, after publication of notice to any others who may have an interest in the property, will seek an order of abandonment from the Court, thereby authorizing the United States to destroy or otherwise dispose of such property according to law. Defendant understands that abandonment of this property shall not be treated as satisfaction of any fine, cost of imprisonment, or any other penalty the Court may impose.

21.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant. Furthermore, after sentencing, the government will move to dismiss the indictment now pending against the defendant in criminal case 16 CR 587 before the Honorable Judge Manish S. Shah in the U.S. District Court for the Northern District of Illinois.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

22.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 17 CR 789.

23.     This Agreement concerns criminal liability only.  Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity.  The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

24.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.     **Trial rights**.  Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.     The trial could be either a jury trial or a trial by the judge sitting without a jury.  However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random.  Defendant and his attorney would participate in choosing the jury by requesting that the Court remove

19

prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

      iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

      iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

      v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

      vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.      At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.      **Waiver of appellate and collateral rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, if the government makes a motion at sentencing for a downward departure pursuant to Guideline § 5K1.1, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of

21

counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

25.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs.  Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

26.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters.  The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

27.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer.  Defendant understands that providing false or incomplete information, or refusing to provide this information,

may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

28.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

29.     Defendant understands that pursuant to Title 18, United States Code, Sections 3583(d) and 4042(c), the Court must order as an explicit condition of supervised release that defendant register as a sex offender in compliance with the requirements of the Sex Offender Registration and Notification Act. Defendant also understands that he will be subject to federal and state sex offender registration requirements independent of supervised release, that those requirements may apply

23

throughout his life, and that he may be subject to state and federal prosecution for failing to comply with applicable sex offender registration laws. Defendant understands that no one, including his attorney or the Court, can predict to a certainty the effect of his conviction on his duties to comply with current or future sex offender registration laws. Defendant nevertheless affirms that he wants to plead guilty regardless of any sex offender registration consequences that his guilty plea may entail.

30.     Defendant agrees to participate in psychological counseling and sex offender treatment as directed by the Probation Office as a condition of any sentence of probation or supervised release imposed.

### Other Terms

31.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

32.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

33.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

34.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement.   Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement.   Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

35.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

36.     Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

37.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney.  Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.


AGREED THIS DATE: _____2/19/19_____


_____          _____
JOHN R. LAUSCH, JR.                              RONALD FEDER
United States Attorney                               Defendant

_____          _____
ANDREW J. DIXON                                    EUGENE STEINGOLD
Assistant U.S. Attorney                              Attorney for Defendant


26