UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17 CR 789 |
| | ) | Judge Kennelly |
| RONALD FEDER, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**

Defendant, RONALD FEDER (hereinafter "Feder"), by his court-appointed attorney Eugene Steingold, respectfully submits the following sentencing memorandum to the Court, in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment as required by 18 U.S.C. § 3553(a) in light of United States v. Booker, 125 S. Ct. 738 (2005), and its progeny. (Eugene Steingold was appointed to represent Feder pursuant to CJA in this case. Feder is represented by private counsel in case before Judge Shah).

**INTRODUCTION**

On December 8, 2017, Feder was charged with violation of 18 U.S.C. §2252 (a)(1). Feder had a pending case before Judge Shah (16 CR 587). On February 19, 2019, Feder entered a plea of guilty to the indictment pursuant to a written plea agreement. (Plea agreement included elements of case pending before Judge Shah)

On January 25, 2018, the Feder, was indicted on five counts: transportation of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(1) (Counts 1-3), distribution of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(2)(B) (Count 4), and possession of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Count 5).

1

On February 19, 2019, Feder pleaded guilty to counts One and Four of the indictment pursuant to a plea agreement in which the government agreed to dismiss the remaining counts, as well as another possession of child pornography case pending against Feder in *US v. Feder*, 16 CR 587 (Shah, J.), to which Feder stipulated in his plea. As part of his plea agreement, and in consideration of Feder's cooperation, Feder and the government agreed, pursuant to Fed R. Crim. P. 11(c)(1)(C), that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons of 25 years. Sentencing is set for June 27, 2019 at 9:30 a.m.

## BACKGROUND

Feder is 32 years old. He was born in Washington, D.C. He has two siblings, a brother (who is married and resides in Chicago area), and a sister who resides in New York. Feder moved to Florida when he was six months old. When he was ten years old the family moved to Maryland. When he was about thirteen, Feders moved to Chicago area. Feder's father was unstable and abusive. Feder had physical altercations with him and was locked out of the house several times. In 1998 Feder was diagnosed with ADHD. Feder was heavily medicated for this condition and saw many therapists. While growing up, Feder was also sexually abused by his father. Feder has not been sexually active. Around 2004, Feder masturbated his then ten or eleven year-old brother on two to three occasions.

He graduated from "Therapeutic School" in 2004. While in school he saw a therapist who suspected that Feder was sexually abused. Feder graduated from Illinois Institute of Arts in 2009.

From 2011 through 2014 he worked as a civilian employee for the U. S. Merchant Marines. While in service, in Philippines, in 2014 Feder was diagnosed with major

2

depressive disorder and prescribed sleeping medication. Upon return to Chicago area he worked as a grocery store clerk and a warehouse picker in Skokie, Illinois. Feder also worked as a truck driver.

According to the government, between January 12, 2014 and June 28, 2014, Feder, while an employee of the Department of Defense stationed in Japan and the Philippines, possessed multiple devices containing child pornography, including child pornography depicting prepubescent minors being bound and raped. On September 14, 2016, Feder was charged with possession of child pornography by a person employed by U.S. armed forces outside the United States (*US v. Feder*, 16CR587 (Shah, J.)).

While on supervised release for that offense, in November 2017, Feder began communicating with an undercover law enforcement officer ("UC") via the secure messaging platform Wire Swiss GmbH ("Wire"). UC offered to trade child pornography with Feder in exchange for the UC arranging a meeting at which Feder could molest the UC's minor nephew and niece. Feder further discussed with the UC strategies for molesting children and for obtaining child pornography and described watching and fantasizing about children at the grocery store where he was employed. The thumb drive, which Feder handed to the UC, contained approximately 453 videos and 7,932 images containing child pornography, including multiple videos showing adult males ejaculating onto the faces of prepubescent minors. Following a search of Feder's home—where he was staying while on pre-trial release for his prior child pornography case—law enforcement additionally recovered from Feder's bedroom, among other things, latex molds of prepubescent vaginas and female children's underwear.

### COMMENTS PERTAINING TO THE PRESENTENCE INVESTIGATION REPORT

Federal Rule of Criminal Procedure 32 (d) (1) (B) requires that presentence investigation report (hereinafter "PSR"), contain calculation of defendant's offense level and criminal history. PSR's sentencing guideline range for total offense level of 42 is 360 months to life, based on offense level of 42 and criminal history category of I. Probation is recommending a sentence of 300 months of custody.

1. **Corrections to Factual Statements in the PSR**:

Feder disagrees with some of the conclusions reached by the Probation Officer in the PSR and Sentencing Recommendation. Feder has several minor corrections to make to the factual recitation regarding enhancements. Specifically, Feder disputes PSR ¶43 Specific Offense Characteristics: The defendant engaged in a pattern of activity involving the sexual abuse or exploitation of minor. More specifically, on two or three occasions, when the defendant was approximately 17, he masturbated his then ten or 11-year-old brother. It is noted, that according to an arrest report, the defendant put his penis in his brother's anus and mouth. USSG §2G2.2(b)(5). Feder never committed this act. While, Feder has no formal evidence to the contrary he was not arrested. He was taken to police station and released. (According to PSR ¶61, Feder was arrested and placed into custody by Chicago Police for Predatory Criminal Sexual Assault. Feder was allegedly identified as the person who placed had placed his penis into the mouth and anus of his then nine-year-old brother. PSR notes that "A court case associated with this arrest could not be located.)

Clearly, family members residing with Feder are the only people who could make such allegations. Ellen Edelman, Feder's mother, was interviewed by Probation. There is nothing in the PSR to corroborate this allegation.

4

2. **Offense Level Calculations:**

    A. **Base Offense Level**

The offenses of conviction and the stipulated offense are grouped. Pursuant to Guideline § 2G2.2(a)(2), the base offense level is 22. On September 14, 2016, Feder was charged in the U.S. District Court for the Northern District of Illinois with possession of child pornography by a person employed by U.S. armed forces outside the United States (*US v. Feder*, 16CR587 (Shah, J.)).

Therefore, based on the facts now known to the government, the anticipated offense level is 42, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 360 months to life imprisonment, in addition to any supervised release, fine, and restitution the Court may impose

    B. **Specific Offense Characteristics:**

According to PSR, between January 12, 2014 and June 28, 2014, Feder, while an employee of the Department of Defense stationed in Japan and the Philippines, possessed multiple devices containing child pornography, including child pornography depicting prepubescent minors being bound and raped.

Feder cooperated in relation to the investigation of multiple other individuals for child exploitation offenses, several of whom the government may not have been able to prosecute if not for Feder's assistance. As part of Feder's cooperation he allowed law enforcement agents to assume his online identity. He also testified before Grand Jury. In consideration of Feder's cooperation, the government and Feder have agreed pursuant to Fed. R. Crim. P. 11(c)(1)(C) that the sentence imposed by the Court shall include a term

of imprisonment in the custody of the Bureau of Prisons of 25 years.

Attached reference letters written on Feder's behalf describe what life was like when Feder was growing up.

1. **Corrections to Factual Statements in the PSR**:
Feder disagrees with some of the conclusions reached by the Probation Officer in the PSR and Sentencing Recommendation. Feder has several minor corrections to make to the factual recitation regarding enhancements.

2. **Offense Level Calculations:**

   A. **Base Offense Level**:

   According to the PSR base offense level is 22. Feder understands that total offense level after deduction, if any, for acceptance of responsibility, is 42.

   B. **Specific Offense Characteristics**:

   The probation office concluded that level of specific offense characteristics is 45.

**Defendant's Position:**

Feder's objections (if any) do not affect guideline calculations.

3. **Criminal History:**

Feder has a total of 0 criminal history points—category I.

## POST-BOOKER SENTENCING CONSIDERATIONS

When sentencing an individual, a court is required to determine how best to comply with 18 U.S.C. §3553(a)'s primary directive: to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. In making this determination, courts should consider the advisory sentencing guidelines, but must weigh all of the § 3553(a) factors. Kimbrough v. United States, 128 S. Ct. 558, 564-565 (2007),

United States v. Booker, 543 U. S. 220, 245 (2005). This statute requires district courts to give "respectful consideration" to the guidelines, but "permits the court to tailor the sentence in light of other statutory concerns as well." Kimbrough, 128 S. Ct. at 570 (citing Booker, 543 U.S. at 245-246); see also Gall v. United States, 128 S. Ct. 586,594-596 (2007). A district court is free to impose a non-guideline sentence when the case falls outside the "heartland," when the guideline range fails to reflect the §3553(a) considerations, or when a case "warrants a different sentence regardless." Rita v. United States, 127 S. Ct. 2456,2465 (2007).

The sufficient-but-not-greater-than-necessary directive is not a "factor" to be considered. Rather, it sets an independent upper limit on the sentence a court may impose. In determining what sentence is sufficient but not greater than necessary, the court should consider several factors including (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the guidelines and policy statements issued by the Sentencing Commission, including the (now advisory) guideline range; and (3) the need to provide the defendant correctional treatment "in the most effective manner." 18 U.S.C. § 3553(a)(1), (a)(2)-(6). Attached reference letters (Exhibit A) as well as PSR show that Feder while having some psychological issues is a decent, non-violent individual.

### The Factors Pursuant to 18 U.S.C. § 3553(a)

**I.   The Court in Determining the Particular Sentence to be Imposed, Shall Consider—**
**(a) (1)  the nature and circumstances of the offense and the history and characteristics of the defendant**

The History and Characteristics of the Defendant

According to the PSR Feder is a 32-year-old man with a documented history of depression. Feder is one of 3 siblings. His parents were divorced when Feder was 16, due

7

to his father's abusive behavior. Feder's mother remarried. Feder's stepfather is a convicted sex offender. Feder has Attention Deficit Hyperactivity Disorder (ADHD). He had trouble in school in Maryland and was suspended numerous times. Beginning in 2011 through 2014, Feder worked as a civilian with the U. S. Merchant Marines.

The Nature and Circumstances Of The Offense.

 Feder pleaded guilty pursuant to a written plea agreement.

Physical Condition

 Feder's physical condition is stable at this time. He is lactose intolerant and has some allergies. He also suffers from chronic back pain.

Mental and Emotional Health

 Feder has ADHD and was heavily medicated while in school. He was diagnosed with depressive disorder. He does on occasion have suicidal thoughts.

Substance Abuse
 Feder has no history of substance abuse.

**(a)(2) the need for the sentence imposed—**
(A) to Reflect the Seriousness of the Offense, Promote Respect for the Law, and To Provide Just Punishment For the Offense:

 This is a very serious offense and Feder is facing a sentence of lengthy incarceration. However, such a sentence of lengthy incarceration will not help protect the public, nor send a message to others.

(B) To Afford Adequate Deterrence to Criminal Conduct;

 Deterrence is generally divided into two subcategories: (1) specific and (2) general. Specific deterrence is to deter Feder personally from committing crimes again and general is to send a message to the community at large. Feder is 32 years old and is unlikely to be released soon. The Sentencing Commission has found that recidivism rates decline

relatively consistently with age. Feder presents no threat of recidivism, and poses no risk to the community with proper supervision.

As to general deterrence, Feder has a serious criminal record. A lengthy sentence of imprisonment is not necessary to afford general deterrence because this case has unique factual basis and it is unlikely that there are other similarly situated individuals who would know the consequences for violating criminal laws.

(C) to protect the public from further crimes of the defendant;

Predicting the possibility that any offender will commit future crimes is always problematic. It is highly unlikely, however, that, Feder would commit any other crimes, given the lengthy sentence he is facing. It is almost impossible (unless one has no access to internet) to prevent the public from getting access to pornography.

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

> §5H1.3. Mental and Emotional Conditions (Policy Statement)
>
> Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guidelines. See also Chapter Five, Part K, Subpart 2 (Other Grounds for Departure).
>
> In certain cases a downward departure may be appropriate to accomplish a specific treatment purpose. See §5C1.1, Application Note 6.
>
> Mental and emotional conditions may be relevant in determining the conditions of probation or supervised release; e.g., participation in a mental health program (see §§5B1.3(d)(5) and 5D1.3(d)(5)).

Feder clearly has emotional problems. At the MCC Feder participated in all available treatment programs. He was issued a Certificates of Completion of Basic Cognitive Skills Group and Budgeting Class. Feder has also been teaching classes about CDL (commercial driving). (Copies of Certificates are attached as Exhibit B).

9

While at the MCC, Feder consulted with psychologist, Dr. Cushing, an expert in psychosexual matters. Dr. Cushing's conclusions and recommendations are as follows:

"Ronald Feder is a 32-year-old, never married, Caucasian male who plead guilty to one count of Transportation of Child Pornography and one count of Possession/Distribution of Child Pornography. For more perspective, the thumb drive Mr. Feder reportedly handed the UC in his case contained approximately "453 videos and 7,932 images containing child pornography, including multiple videos showing adult males ejaculating onto the faces of prepubescent minors." While Mr. Feder acknowledged he was trending towards a contact sexual offense, his only acknowledged contact victim was his younger brother who he masturbated on two or three different occasions (when he was 15 or 16 and his brother was eight or nine years of age)".

"Risk assessment tools such as the Sex Offender Risk Appraisal Guide (SORAG) and the Static-99-R can only be utilized among men who have committed at least one previous hands on sexual offense. It should be noted that Mr. Feder was never charged or convicted of any prior sexual offenses. The aforementioned tools should not be used with offenders only charged or convicted of possession or distribution of child pornography unless their behavior involved the creation of child pornography with a real, identifiable child. While these tools should not be utilized on a formal basis, the risk factors on these tools have been empirically shown to be associated with sexual recidivism.

<u>Mr. Feder's sexual recidivism risk is increased by the following factors</u>:

  Current age (risk for sexual recidivism is reduced over age 40)

  Has never lived with a lover for at least two years

  Admitted sexual interest in prepubescent males and females

  Admitted nightly masturbation to child pornography images for several years prior to his arrest (Mr. Feder referred to his use of child pornography as an addiction.)
  Acknowledgement he was trending towards a contact sexual offense

  Did not live with both biological parents until age 16

  Never been married at time of index offense

  Failure on prior conditional release

<u>Factors that would decrease his risk for sexual recidivism are as follows:</u>

No prior charges or convictions of sex offenses

No criminal history for violent or non-violent offenses

No history of alcohol problems

Has taken responsibility for his offense behavior and acknowledges his deviant sexual interest and need for treatment. The following two reports and studies should also be considered when determining Mr. Feder's risk for sexual recidivism. According to the 2012 Report to the Congress, Federal Child Pornography Offenses, what we know about non-production child pornography offenders is their general recidivism rate is around 25 to 30 percent during an average follow up period of eight and a half years after their reentry into the community. Their sexual recidivism rate during that same follow up period was only 7.4 percent. Their known "contact" sexual recidivism rate was only 3.6 percent. Alternately, non-production child pornography offenders like Mr. Feder have recidivism rates that are lower than those who are contact sex offenders. Another study was conducted by researchers at the Federal Bureau of Prisons (BOP). According to this study, "the BOP study concerned 870 production and non-production child pornography offenders released from the BOP between 2002 and 2005 and reviewed for evidence of recidivism with an average follow up period of 3.8 years. Regarding general recidivism rates, 221 of the 870 (25.4 percent) child pornography offenders were arrested or convicted for a new criminal offense or were arrested or revoked for a "technical" violation. Fifty offenders (5.7 percent) engaged in sexual recidivism, which the study defined as new, non-production child pornography offenses, other non-contact sex offense, or contact sex offenses."

Since Mr. Feder has not "contact" sex offenses as an adult (did acknowledge molesting his younger brother during his teen years) and his offense behavior did not involve the production of child pornography, his risk for sexual recidivism (defined as new non-production child pornography offenses, other non-contact sex offenses, or contact sex offenses) could be described as rather low given the studies referenced above. What certainly increases his risk for sexual recidivism is his untreated Pedophilic Disorder. Mr. Feder does, however, appear to be a good candidate for sex offender treatment given his acceptance of responsibility for his offense behavior and his arousing fantasies about, urges for, and masturbation to images of prepubescent boys and girls. Once he successfully completes treatment through the BOP his risk would be lowered even further.

At the MCC he is prescribed medication for depression. MCC records further indicate Feder has been sleep impaired and he reported that his concentration has decreased. (He has been diagnosed with Major Depressive Disorder.) He is hopeful that while attending sex offender treatment he will learn about his behavior to "prevent it from happening again." Feder explained that he does "not know what his triggers are" and wants to continue getting treatment.

(a)(3) the kinds of sentences available:
Feder is facing a substantial period of imprisonment.

(a)(7) the need to provide restitution to any victims of the offense:

According to the PSR (PSR¶ 134), restitution is mandated in this case. PSR lists 22 victims who seek $3,000.00 each. Cursory review of voluminous reports pertaining to restitution show several law firms from New York, Washington State, Utah, Oregon, and North Carolina seeking to be paid by Feder for variety of services such as medical services, lost income, and attorneys' fees among others. All appear to be "boilerplate" requests.

The fine range for this offense is from $50,000 to $250,000 pursuant to §5E1.1 Imposition of a fine is discretionary, and, defendant respectfully submits that it should not be ordered in this case. Feder's financial condition is such that he is unable to pay any significant fine, and is not likely to be able to do so in the foreseeable future. (U.S.S.G. §5E1.2(a), fine is not recommended if defendant unable to pay).

Feder is charged with Class C felonies with sentencing range of 5 to 20 years imprisonment. As noted by probation officer if Feder did not receive additional enhancements his total offense level would be 35, with a guideline range of 168 to 210 months. The guidelines are constantly being modified and updated. Clearly, what Feder

needs is treatment. Upon release, Feder should still be able to become a productive member of society.

**Mandatory Supervised Release:**

In <u>United States v. Thompson</u>, 777 F.3d 368 (7th Cir. 2015), appellate court stated that "[T]he primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment."

With respect to supervised release conditions, Feder objects to the proposed discretionary conditions (6) because Feder may have no knowledge a person is planning to be engaged in criminal activity, and (7) you shall refrain from <u>any</u>…use of alcohol. Also, special condition (5) about incurring credit charges or additional lines of credit without approval. Also (9)—you shall not possess or use any device with access to any online computer service…

**CONCLUSION**

For the foregoing reasons, Feder respectfully requests that this Honorable Court impose a sentence taking into account his personal circumstances, as outlined in the PSR and this Sentencing Memorandum.

RONALD FEDER,

By: s/Eugene Steingold
Eugene Steingold, his court appointed attorney

Eugene Steingold,
Attorney for Defendant
111 West Washington Street, Suite 1110
Chicago, Illinois 60602
(312) 726-1060
steingoldlaw@mac.com

13