```
                IN THE UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF ILLINOIS
                           EASTERN DIVISION


UNITED STATES OF AMERICA,            )   Docket No. 17 CR 789
                                     )
               Plaintiff,            )
                                     )
         vs.                         )
                                     )
RONALD FEDER,                        )   Chicago, Illinois
                                     )   June 27, 2019
               Defendant.            )   10:00 o'clock a.m.


                   TRANSCRIPT OF PROCEEDINGS
             BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:

For the Plaintiff:    HON. JOHN R. LAUSCH, JR.
                      United States Attorney
                      BY:  MR. ANDREW J. DIXON
                      219 S. Dearborn St., Suite 500
                      Chicago, Illinois  60604




For the Defendant:    LAW OFFICES OF EUGENE STEINGOLD
                      BY:  MR. EUGENE STEINGOLD
                      111 West Washington Street, Suite 1051
                      Chicago, IL  60602
                      (312) 726-1060


Also Present:         MS. MEREDITH CLIFTON, U.S. Probation



Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                      Official Court Reporter
                      219 S. Dearborn Street, Suite 2102
                      Chicago, Illinois  60604
                      (312) 435-5639
```

1   (The following proceedings were had in open court:)
2   THE CLERK:  Case No. 17 CR 789, USA v. Feder.
3   MR. DIXON:  Good morning, your Honor.  Andrew Dixon
4 on behalf of the United States.
5   MR. STEINGOLD:  My name is Gene Steingold, and I was
6 appointed to represent Mr. Feder, who should be here.
7   And, your Honor, if I may, I just received from
8 Mr. Feder a motion, if I may hand it to the Court.
9   THE COURT:  Okay.  I think this is multiple copies of
10 the same thing.
11   And some of these are some notes.  I don't know if
12 you wanted to give me these.  Let's give these notes back to
13 Mr. Feder.
14   So I'm going to give one copy of this to Mr. Dixon
15 since I only need two, and there's --
16   MR. STEINGOLD:  I showed it to him already.
17   THE COURT:  Yeah.  I am going to -- here is a copy
18 for Mr. Steingold and a copy for Mr. Dixon.
19   Okay.  So let me just read it here for a minute.
20     (Brief pause.)
21   THE COURT:  Okay.  I have a couple of questions.
22   THE DEFENDANT:  Sure.
23   THE COURT:  Mr. Feder, when you say that
24 Mr. Steingold has been vacant from the case for over six
25 weeks, I don't -- what do you mean by that?

1  THE DEFENDANT: I was aggregating the total of --
2 since the beginning.
3  THE COURT: Okay. You are not saying the last six.
4  THE DEFENDANT: No, no, no.
5  THE COURT: Okay. But what does it mean to be
6 "vacant"? In other words -- I don't understand what that
7 means.
8  By the way, go ahead and give your name, and I can
9 have you sit down. I apologize for not giving you a chance.
10  MS. CLIFTON: Good morning, your Honor. Meredith
11 Clifton on behalf of probation.
12  THE COURT: You can go ahead and sit down if you'd
13 like to.
14  Go ahead, Mr. Feder.
15  THE DEFENDANT: Since the beginning, it seems -- I
16 have had several concerns about how the case is proceeding,
17 and I have had ideas and tactics and information and stuff
18 that I thought should be -- would be very relevant, and there
19 seems to have been a lack of understanding or communication
20 from the beginning.
21  THE COURT: Okay. This is the first time you've told
22 me this, though, right?
23  THE DEFENDANT: Yes, your Honor.
24  THE COURT: Bear with me a second. I want to look up
25 something. So just hang on one second.

1   I've got to pull something up from the docket. It's
2 going to take me a minute to do that. I apologize.
3   Okay. So was this happening before the guilty plea?
4 You pled guilty on the 19th of February.
5   THE DEFENDANT: Yes, your Honor.
6   THE COURT: This was happening before that? By
7 "this," I mean Mr. Steingold not being responsive to you?
8   THE DEFENDANT: Yes.
9   THE COURT: Okay. Give me a second here.
10   I'm going to read to you --
11   MR. STEINGOLD: Also, if I may respond, I have my
12 time sheets here.
13   THE COURT: Not yet.
14   MR. STEINGOLD: I'm sorry.
15   THE COURT: Not yet.
16   I am going to read to you from the rough transcript
17 of the hearing on the 19th of February.
18   THE DEFENDANT: Okay.
19   THE COURT: Have you had any trouble communicating
20 with Mr. Steingold? In other words, telling him what you need
21 to tell him about the case or communicating or anything like
22 that? No.
23   Have you had any trouble understanding what he's
24 telling you? No.
25   That was about the medication.

1          And then I asked you the following:
2          Tell me your lawyer's name.  You said, Eugene
3  Steingold.
4          "QUESTION:"  -- the questions are all by me -- "have
5  you had enough time to talk to Mr. Steingold about this case?
6          "ANSWER:  I have.
7          "QUESTION:  Have you had enough time to talk to him
8  about the allegations in the other case?
9          "ANSWER:  Yes, sir.
10         "QUESTION:  Have you told him everything you know about
11 both cases?
12         "ANSWER:  Yes.
13         "QUESTION:  Has Mr. Steingold answered all of your
14 questions?
15         "ANSWER:  So far, yes.
16         "QUESTION:  Are you satisfied with the advice that he's
17 given you?
18         "ANSWER:  Yeah.
19         "QUESTION:  Are you satisfied with the work that he's
20 done for you so far?
21         "ANSWER:  So far.
22         "QUESTION:  If you have any problems -- if you had any
23 problems with the quality of Mr. Steingold's representation,
24 you have to tell me now.  For example, if you think that
25 there's something that he didn't do that he should have done,

1  or you think that there's something that he did that he should
2  not have done or incompetently or incompletely or incorrectly,
3  it's important to tell me now.  Do you have any issues like
4  that with Mr. Steingold at all?
5      "ANSWER:  No."
6      I said:  "You hesitated for a second."  You said:
7  "I've had a few questions come up recently that have been
8  addressed, though."
9      Question by me:  "But they got addressed?"  Answer:
10  "Yes."
11      That's what you told me.  Is that -- were those lies?
12      THE DEFENDANT:  No, your Honor, they were honest
13  answers made under the pretext of further fighting of the --
14  of information in the plea deal later on in the case.
15      THE COURT:  I don't understand what you mean --
16      THE DEFENDANT:  In particular --
17      THE COURT:  -- further fighting of information in the
18  plea deal later on.  What does that mean?
19      THE DEFENDANT:  I was under the impression that
20  moving forward, we were going to then try to mitigate some of
21  the time and some of the --
22      THE COURT:  The plea agreement had an agreed-upon
23  sentence in it of 25 years, which I also covered with you.  I
24  don't need to read that over again.  I know that I covered
25  that with you.  And you said you understood that I couldn't --

1 that if I went along with the plea agreement, I was going to
2 have to impose that sentence.
3 　　　　So I guess I'm having a hard time understanding what
4 you're talking about when you say about mitigating the
5 sentence.
6 　　　　THE DEFENDANT: Mitigating some of it. I'm not
7 trying to -- I'm not trying to beat this case, your Honor. I
8 understand what I've done, and moving forward, I thought I was
9 going to be able to fight to get downward departures a little
10 bit more than --
11 　　　　THE COURT: Here is the part in the same hearing.
12 Paragraph 12 -- I'm referring to the plea agreement --
13 paragraph 12, which is on pages 14 and 15, says that: "When I
14 sentence you, the government is going to advise me of your
15 cooperation, and if the government believes that you've lived
16 up to your agreement to cooperate truthfully and fully, the
17 government is going to ask me to give you a sentence below the
18 low end of that range that I come up with under the sentencing
19 guidelines and to impose a specific sentence. Do you
20 understand that?
21 　　　　"ANSWER: I do.
22 　　　　"QUESTION: Paragraph 13 says that if the government
23 makes that request to sentence you below the guideline range,
24 you and the government have made an agreement that I'm going
25 to impose a sentence of 25 years' imprisonment. Do you

1 understand that?

2 "ANSWER: Yes.

3 "And what paragraph 13 goes on to say is that if I
4 agree with that and impose that sentence, you will not be able
5 to change your mind and back out of the plea agreement. In
6 other words, that's going to be the sentence."

7 "ANSWER: I do.

8 "QUESTION: If I decide that that's not an appropriate
9 sentence, for whatever reason, then I will, in effect, be
10 rejecting the plea agreement, and you will have the ability to
11 back out of the plea agreement at that point and either
12 proceed to trial or plead guilty, whatever you choose to do.
13 Do you understand that?

14 "ANSWER: I do."

15 You covered -- you said that you understood that this
16 was an agreed-upon -- in other words, if the government makes
17 this motion for what's called a 5(k) downward departure, that
18 I was going to impose a sentence that you and the government
19 had agreed upon. So when you say that you understood that
20 Mr. Steingold was going to try to mitigate the sentence, I
21 guess I am having a hard time following.

22 Can you explain it a little bit better?

23 THE DEFENDANT: There -- before I went in to sign the
24 plea deal, we had discussed the strategy moving forward, and I
25 was being told at the time that it's important that I get the

1 guilty plea in and the rest of it is, at that point,
2 negotiable to some extent moving forward.
3     THE COURT: That's not what the document that you
4 signed says, that's not what the document that we went over in
5 court says, and that's not what the discussion I had with you
6 said. Not even close. It's the opposite of that.
7     THE DEFENDANT: I understand that, but that's during
8 the communications between me and my attorney. That's what
9 the impression was given.
10     THE COURT: Why didn't you tell me this when you were
11 in here on February the 19th then?
12     THE DEFENDANT: Because I didn't realize at the time
13 that moving -- that that was not typical procedure.
14     THE COURT: You realized you were under oath, right?
15     THE DEFENDANT: Yes, I do.
16     THE COURT: You realized that you had to give
17 truthful answers to my questions?
18     THE DEFENDANT: Right. Yes.
19     THE COURT: And I asked you whether you understood
20 that you -- whether you understood that there was an
21 agreed-upon 25-year prison sentence, and you said yes.
22     THE DEFENDANT: Yes, your Honor. I did --
23     THE COURT: You didn't think "agreed" meant agreed?
24 I am having a hard time getting it.
25     THE DEFENDANT: No, agreed was agreed. I thought

1 under the pretext of the 5(k) coming down off of that 25.

2 THE COURT: 5(k) was what was going to get you to
3 the 25, which is what I explained to you and just read to you
4 a minute ago.

5 THE DEFENDANT: Then I am -- misunderstood in those
6 details.

7 THE COURT: And the plea agreement says exactly that.
8 It says exactly that. There's nothing in the plea agreement
9 that one would look at and say, oh, the 25 is just the
10 starting point, I am going to get to argue for a lower
11 sentence.

12 THE DEFENDANT: I understand that, your Honor.
13 Then the -- in terms of the plea deal itself, still
14 if I have to keep it, I'm keeping it. It's just moving
15 forward, there's other issues at -- at play here.

16 THE COURT: Well, I mean, you're asking me to fire
17 your lawyer, so what are the other issues that are at play
18 here?

19 THE DEFENDANT: In terms of the sentencing
20 memorandum, the -- I provided over 14 pages of statistics and
21 mitigating information and case law moving forward and -- to
22 help -- just to help in terms of sentencing, and none of that
23 made it in, along with a few paragraphs that -- in the
24 memorandum itself that I feel are actually, from my
25 perspective, detrimental.

1  THE COURT: Okay. Well, so, look -- does anybody
2  have any -- anybody want to say anything?
3  You wanted to say something, Mr. Steingold.
4  MR. STEINGOLD: Well, first of all, Mr. Feder was
5  represented by Mr. Garfinkel, who was a retained attorney.
6  THE COURT: In the case in front of Judge Shah.
7  MR. STEINGOLD: That's correct.
8  And so -- and I have my time sheets here. I've seen
9  Mr. Feder -- in fact, I saw him yesterday. I saw him -- today
10 is Thursday. I saw him Monday. And while Mr. Feder received
11 about a thousand pages' worth of victim impact statements, I
12 went through it. I said, I understand you want to read
13 everything, but that's not going to affect the sentence.
14 I also had Mr. Feder examined by -- and I put it in
15 the memorandum -- by a psychosexual expert, and what I thought
16 Mr. Feder needs is treatment. So I said -- I suggested to
17 him, let's proceed with the sentencing because continuing it
18 isn't going to accomplish anything. And if you need
19 treatment, there is a possibility that there are some
20 facilities like in Springfield where they have psychological
21 help that he might be designated.
22 I know the Court has no authority to -- the Court can
23 only recommend a facility. The Court's got no -- I believe,
24 it might have changed, but you can only recommend --
25 THE COURT: No. I can recommend. That's it.

1  MR. STEINGOLD: Yeah.

2  And, you know, I went through this memorandum with
3  him numerous times, and while Mr. Feder was hesitant about
4  getting sentenced, I explained to him that he pled guilty
5  already, so it's not going to change anything. So while he's
6  got statistics, all kind of statistics, that's not going to
7  affect his sentence; or it might affect, I don't know, but
8  that's what I told him.

9  THE COURT: Can I ask a question on a different
10 topic? I know we had some discussion about this before, but
11 it's contemplated that -- you know, I think it's -- the way
12 it's worded is that if I end up accepting the plea agreement,
13 that the other case that's in front of Judge Shah is going to
14 get dismissed.

15 MR. DIXON: Correct.

16 THE COURT: And that's the case in which there's
17 another -- different attorney, retained counsel,
18 representing -- it's Mr. Garfinkel, representing Mr. Feder. I
19 have this sort of queasy feeling in the pit of my stomach
20 about disposing -- has Mr. Garfinkel been involved in any of
21 these discussions?

22 MR. DIXON: Mr. Garfunkel has been aware of the
23 discussions that have been taking place, but he was not
24 involved in the negotiation of the plea agreement.

25 THE COURT: Presumably, Mr. Feder could have involved

1  him if Mr. Feder wanted to.
2          MR. STEINGOLD: If I may, your Honor, and I don't
3  speak bad about any lawyer, the only time I heard from
4  Mr. Garfunkel was when I was on vacation. He called me
5  yelling at me. I suggested to Mr. Garfunkel to come and see
6  Mr. Feder at the MCC. I said, I'll go with him. You can come
7  to court and you could go and talk to Mr. Feder there.
8          He's never responded. I never heard from -- I never
9  met the man.
10         THE COURT: Yeah, I think you may have told me this
11 before --
12         MR. STEINGOLD: Yeah. I never met him.
13         THE COURT: Yeah.
14         MR. DIXON: Your Honor, the government's position on
15 this is it wasn't the government's place to decide --
16         THE COURT: Yeah, I completely get that.
17         Mr. Feder, have you tried to get Mr. Garfinkel
18 involved in any of this?
19         THE DEFENDANT: I have tried adding him on the court
20 links to be able to email him. I don't have his address for
21 writing him a letter, but he has never come to see me --
22         THE COURT: You can call him on the phone.
23         MR. STEINGOLD: He's never come to see him.
24         Did he ever come to see you?
25         THE DEFENDANT: No, I haven't seen him.

1  THE COURT: Okay. But I was asking whether you
2 reached out to him. You can call him on the phone, right?
3 They have phones at the MCC still, don't they?
4  THE DEFENDANT: They do.
5  THE COURT: Yeah.
6  THE DEFENDANT: I could have if I had his number, but
7 I was never provided the information. I never had a business
8 card from him or any kind of contact from him. I had asked
9 him in court a couple times for him to come meet me, and he's
10 never followed through.
11  THE COURT: And there have been status hearings in
12 the case in front of Judge Shah. Has Mr. Garfinkel been at
13 the status hearings?
14  MR. DIXON: Your Honor, I have not personally been --
15  THE COURT: That's not your case?
16  MR. DIXON: That's not my case. But my understanding
17 is he has because I talked with the AUSA who was there, and
18 she mentioned discussing with him --
19  THE COURT: So he's been there?
20  THE DEFENDANT: Yes.
21  THE COURT: Okay. And remind me what the case number
22 of that case is. It's in the plea agreement in this case.
23 It's 16 CR something.
24  MR. STEINGOLD: 16 CR 587.
25  THE COURT: Okay.

1           MR. STEINGOLD: I have his information --
2           THE COURT: Okay. So there was a status hearing
3    about -- it looks like about four weeks ago in late May. So
4    was he there for that?
5           THE DEFENDANT: Four weeks ago. I don't think I was
6    called in.
7           THE COURT: I can find out the answer to this
8    question.
9           THE DEFENDANT: I understand. I don't -- he --
10          THE COURT: No, no. I'm sorry. Judge Shah vacated
11   the status hearing.
12          THE DEFENDANT: Yeah.
13          THE COURT: My mistake. There has not been a status
14   hearing since the plea agreement -- since the guilty plea.
15          There was a status hearing in November. The last
16   status hearing -- I'm sorry. There was a status hearing in
17   November of 2018 and one in January of 2019.
18          Okay. So what I'm hearing from you, Mr. Feder, is
19   that your complaint about Mr. -- complaints, plural, about
20   Mr. Steingold are that he didn't -- you don't have a good
21   understanding of why he didn't include some of your material
22   in his sentencing memorandum.
23          THE DEFENDANT: Yes.
24          THE COURT: That there have been occasions when he
25   has -- hasn't come over to visit you, but it sounds like he's

1  been there quite a bit.  But anyway, there have been occasions
2  when he hasn't.
3  　　　　　And then what else about Mr. Steingold is the
4  problem?
5  　　　　　THE DEFENDANT:  I feel rushed when -- after the --
6  after -- after we got the plea deal -- after we got the --
7  sorry -- the PSI in terms of the sentencing memorandum, and --
8  　　　　　THE COURT:  You feel rushed about what, though?
9  　　　　　THE DEFENDANT:  I don't have time to go over it --
10  while we may have like an hour to read it, I feel rushed
11  knowing that I have just a few days before sentencing.  I
12  don't feel I've been given enough time to actually sit down
13  and contemplate.  My mind doesn't work the fastest, especially
14  first thing in the morning.  It just doesn't -- I have a hard
15  time taking -- figuring things out.
16  　　　　　THE COURT:  Okay.  So you're saying you needed -- but
17  that's not a complaint about Mr. Steingold.  That's a
18  complaint that you didn't have -- well, maybe it is.
19  　　　　　THE DEFENDANT:  Well --
20  　　　　　THE COURT:  The claim is you didn't have the
21  sentencing memorandum long enough before today.
22  　　　　　THE DEFENDANT:  Right.
23  　　　　　THE COURT:  Do you have a copy now?
24  　　　　　THE DEFENDANT:  I --
25  　　　　　MR. STEINGOLD:  He does have a copy.  I dropped it

1  off at the MCC.
2          THE DEFENDANT:  Yeah.
3          THE COURT:  Give him that one too.  You can always
4  print out another copy.
5          So I'm willing to -- so first of all, I am -- I just
6  don't find persuasive the contention that Mr. Steingold hasn't
7  been over there to see you.  Now, maybe you prefer that he's
8  been there more, but given your testimony under oath --
9          THE DEFENDANT:  Yes, your Honor.
10         THE COURT:  -- at the February hearing, you know,
11 your statement today, I just don't find it to be a sufficient
12 basis for -- you know, for terminating Mr. Steingold's
13 representation.  That's number one.
14         Number two, in terms of his non-inclusion of things
15 in the sentencing memorandum, so I will say two things about
16 that.  Number one -- sorry, I am trying to kill a fly -- there
17 are strategic -- strategic issues about what should be in the
18 sentencing memorandum are ultimately up to the lawyer, okay?
19 But you will have, and I will give you, the opportunity, and
20 you're entitled to it at the sentencing hearing, to tell me
21 anything that you'd like.  And if you want to bring in
22 paperwork, statistics, or -- anything you want, I'm happy to
23 look at it.  You can give it to me.  I'll look at it.  I'll
24 consider it.  I'll give you a chance to talk about it.
25         But when Mr. Steingold says he didn't think that

1  would make a difference on the sentence, I mean, in a certain
2  sense, it's hard to argue with that because if the government
3  makes this motion and I agree with it, there will then be an
4  agreed-upon sentence.  It's been agreed upon.  So it's hard to
5  argue with Mr. Steingold's logic on that.
6          As far as, you know, needing more time, I'm willing
7  to put this over to a different date to give you more time to,
8  you know, read and digest the sentencing memorandum and think
9  about, you know, exactly what you want to talk to me about at
10 the sentencing and so on.  So maybe that's the way to do it.
11         MR. STEINGOLD:  So just so the record is clear, I
12 prepared the sentencing memorandum.  I met with Mr. Feder at
13 least twice.  We went over it.  I crossed out, I took his
14 suggestions.  I incorporated them.  I mean, I have
15 correspondence from Mr. Feder that's hundreds of pages.
16         THE COURT:  Okay.
17         MR. STEINGOLD:  I mean, I have it somewhere here.
18         THE COURT:  Just to be clear, I am not making a
19 finding that you didn't give him enough time to deal with this
20 thing.  I got a person here who is facing a very long
21 sentence, and I want to make sure that he feels as though he
22 has enough time to think about it before it happens.
23         I mean, it has been five months since the guilty
24 plea, which is longer than the norm anyway, but I don't have a
25 problem --

1          MR. STEINGOLD: I would like to withdraw, basically,
2  because Mr. Feder doesn't want me --
3          THE COURT: You mean you are going to move to
4  withdraw?
5          MR. STEINGOLD: Yes, I would.
6          THE COURT: Your motion is denied.
7          So can you do Monday, the 22nd of July, like in the
8  late morning?
9          MR. DIXON: Your Honor, I'm actually going to be on
10 vacation that week.
11         THE COURT: Well, you are going to get more time than
12 you thought, Mr. Feder, to look at this.
13         How about the 13th of August at 1:30? Or at -- yeah,
14 at 1:30.
15         MR. DIXON: That's fine for the government.
16         MR. STEINGOLD: That's fine, your Honor. If I'm
17 still in the case, I'll be here.
18         THE COURT: Yeah. Well, I just denied your motion
19 for --
20         MR. STEINGOLD: No, I understand.
21         THE COURT: -- motion to -- with an intent to file a
22 motion to withdraw. If you want to file something else, go
23 ahead and file it. Don't wait until the 13th of August.
24         MR. STEINGOLD: No, I -- okay.
25         THE COURT: And so --

1     MR. STEINGOLD: The only other --

2     THE COURT: -- I will go ahead and file this. We
3 will get this docketed, with what Mr. Feder entitled a motion
4 to withdraw is denied for the reasons stated. Okay?

5     I'll see you on the 13th of August.

6     MR. STEINGOLD: So the only other question that I
7 have, I'm not sure what the case -- in front of Judge Shah, I
8 don't know what the next date is, or is there a date?

9     MR. DIXON: Your Honor, the understanding in that
10 case is they are waiting for us --

11     THE COURT: Presumably what will happen is that date
12 will get moved to -- once they find out that this has been
13 moved.

14     Okay. See you.

15     MR. DIXON: Thank you.

16   (Which were all the proceedings had in the above-entitled
17 cause on the day and date aforesaid.)

18   I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

19

20 Carolyn R. Cox                   Date
   Official Court Reporter
21 Northern District of Illinois
   /s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

22

23

24

25